**BURSOR & FISHER, P.A.**
L. Timothy Fisher (SBN 191626)
Daniel S. Guerra (SBN 267559)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
dguerra@bursor.com

Reuben D. Nathan, Esq. (SBN 208436)
**NATHAN & ASSOCIATES, APC**
2901 W. Coast Hwy., Suite 200
Newport Beach, CA 92663
Telephone: (949) 270-2798
Email: rnathan@nathanlawpractice.com

Ross Cornell, Esq. (SBN 210413)
**LAW OFFICES OF ROSS CORNELL, APC**
40729 Village Dr., Suite 8 - 1989
Big Bear Lake, CA 92315
Telephone: (562) 612-1708
Email: rc@rosscornelllaw.com

*Attorneys for Plaintiff and Putative Class*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MURPHY MARTINES, on behalf of himself and all similarly situated persons,

Plaintiff,

v.

SIMPLE TIRE LLC, a Pennsylvania corporation,

Defendant.

Case No. 2:25-cv-06703-AB-JC

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Date: January 9, 2026
Time: 10:00 am
Courtroom: 7B
Judge: Hon. Andre Birotte Jr.

# TABLE OF CONTENTS

PAGE(S)

INTRODUCTION ........ 1

BACKGROUND ........ 2

PROCEDURAL HISTORY ........ 3

LEGAL STANDARD ........ 3

ARGUMENT ........ 4

I. DEFENDANT'S INSTALLATION AND USE OF TRACKERS INJURED PLAINTIFF WITHIN THE MEANING OF CIPA ........ 4

A. Plaintiff Has An Interest In Preventing the Uncontrolled Dissemination of His Personal Information ........ 4

II. PLAINTIFF CAN MAKE A CLAIM COMPARABLE TO MISAPPROPRIATION ........ 12

III. THE TRACKERS ARE "PEN REGISTERS" BASED ON THE PLAIN TEXT OF CIPA, WHICH CONTROLS ........ 14

A. Federal Courts Have Consistently Held That Comparable Software Is Covered by CIPA §§ 638.50-638.51 ........ 14

B. Nothing In The Statutory Text Limits the Definition Of A "Pen Register" to Telephonic Equipment ........ 17

IV. TO THE EXTENT SCIENTER IS A REQUIREMENT UNDER CIPA § 638.51 IT IS A QUESTION OF FACT NOT RIPE FOR DECISION ........ 17

V. CONCLUSION ........ 19

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Alicia T. v. Cnty. of Los Angeles*,
222 Cal. App. 3d 869 (1990) ........ 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 4

*Aviles v. Liveramp, Inc.*,
2025 WL 487196 (Cal. Super. Ct. Jan. 28, 2025) ........ 16, 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 3, 4

*Camplisson v. Adidas America, Inc.*,
2025 WL 3228949 (S.D. Cal. Nov. 18, 2025) ........ 5, 10

*Chai v. Velocity Invs., LLC*,
108 Cal. App. 5th 1030 (2025) ........ 4

*Deivaprakash v. Conde Nast Digital*,
2025 WL 2779193 (N.D. Cal. Sept. 30, 2025) ........ 10

*Dept. of Justice v. Reporters Committee For Freedom of Press*,
489 U.S. 749 (1989) ........ 7

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ........ 18

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ........ 10

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025) ........ 7, 10

*Gabrielli v. Haleon US Inc.*,
2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) ........ 10, 13

*Gabrielli v. Motorola Mobility LLC*,
2025 WL 1939957 (N.D. Cal. July 14, 2025) ........ 7, 10

*Garon v. Keleops USA, Inc.*,
2025 WL 2522374 (N.D. Cal. Sept. 2, 2025) .......... 14

*Gladstone v. Amazon Web Servs., Inc.*,
739 F. Supp. 3d 846 (W.D. Wash. 2024) .......... 18

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... passim

*Guracar v. Student Loan Sols., LLC,*
111 Cal. App. 5th 330 (2025) .......... 4

*Gutierrez v. Converse Inc.*,
2025 WL 1895315 (9th Cir. July 9, 2025) .......... 16

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 12

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) .......... 11

*Heiting v. Taro Pharms USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal 2023) .......... 17

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) .......... 11

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) .......... 6

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 1, 5, 10

*In re Google, Inc. Priv. Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) .......... 12

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) .......... 11, 12

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 12

*James v. Walt Disney Co.*,
2023 WL 7392285 (N.D. Cal. Nov. 8, 2023) .......... 18

*Jones v. Peloton Interactive, Inc.*,
720 F. Supp. 3d 940 (S.D. Cal. 2024) .......... 11

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 7, 10

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) .......... 11

*Lesh v. Cable News Network, Inc.*,
767 F. Supp. 3d 33 (S.D.N.Y. 2025) .......... 16, 17

*Licea v. Hickory Farms LLC*,
2024 WL 1698147 (L.A. Super. Ct. Mar. 13, 2024) .......... 17

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 12

*McClung v. AddShopper, Inc.*,
2024 WL 189006 (N.D. Cal. Jan. 17, 2024) .......... 6

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
521 F.3d 1097 (9th Cir. 2008) .......... 3

*Mirmalek v. Los Angeles Times Commc'ns LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) .......... 1, 5, 15, 16

*Mitchener v. Talkspace Network LLC*,
2025 WL 1822801 (C.D. Cal. June 27, 2025) .......... 5, 6

*Moody v. C2 Educ. Sys. Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) .......... 5, 16

*Morilha v. Alphabet Inc.*,
2024 WL 5205542 (N.D. Cal. Dec. 23, 2024) .......... 12

*Popa v. Microsoft Corporation*,
153 F.4th 784 (9th Cir. 2025) .......... 7, 8, 9, 10

*R.C. v. Sussex Publishers, LLC*,
2025 WL 948060 (N.D. Cal. Mar. 28, 2025) .......... 5

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) .......... 1, 7, 11

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025) .......... 13, 16

*Roney v. Miller*,
705 F. App'x 670 (9th Cir. 2017) .......... 19

*Rowe v. Educ. Credit Mgmt. Corp.*,
559 F.3d 1028 (9th Cir. 2009) .......... 4

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) .......... 1, 5, 14, 15

*Zarif v. Hwareh.com, Inc.*,
2025 WL 486317 (S.D. Cal. Feb. 13, 2025) .......... 16

**STATUTES**

Cal. Pen. Code § 631 .......... 18

Cal. Pen. Code § 637.2 .......... 4, 5

Cal. Pen. Code § 638.51 .......... 14, 17, 18

Cal Pen. Code, § 638.50 .......... passim

**RULES**

Cal. R. Ct. 8.1115(a) .......... 16

Fed. R. Civ. P. 8 .......... 3, 4

# INTRODUCTION

Defendant Simple Tire LLC ("Defendant" or "Simple Tire") seeks dismissal of Plaintiff Murphy Martines's ("Plaintiff") First Amended Complaint ("FAC"), ECF No. 20, by raising three arguments: (1) that Plaintiff lacks standing; (2) that the trackers at issue do not constitute pen registers or trap-and-trace devices under the California Invasion of Privacy Act ("CIPA"); and (3) that Plaintiff does not allege scienter. Defendant's Motion to Dismiss Plaintiff's FAC ("MTD" or "Motion"), ECF No. 22 at 6-7. Not so.

***First,*** Defendant's argument that Plaintiff suffered no injury is foreclosed by binding precedent. The FAC alleges that Defendant enabled third-party trackers (the "Trackers") that, *inter alia*, intercepted and monetized his behavioral information without consent. *See, e.g.,* FAC ¶¶ 11-12, 60-64, 70-71. Courts have consistently recognized that loss of control over personal data, coupled with its commercial exploitation, constitutes a concrete and particularized injury sufficient to confer standing. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598-99 (9th Cir. 2020); *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075 (N.D. Cal. 2025).

***Second,*** Defendant argues that CIPA § 638.51 is limited to traditional telephone-era devices. MTD at 15-20. But CIPA expressly covers any "device or process" that records or decodes dialing, routing, addressing, or signaling information. FAC ¶¶ 24-35. The weight of authority has applied this definition to modern tracking technologies, including cookies, pixels, and software scripts. *See Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 930-31 (N.D. Cal. 2024); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023); *Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 WL 5102709, at *3-4 (N.D. Cal. Dec. 12, 2024). As a remedial statute designed to protect privacy in light of advancing technology, CIPA's text and legislative history demonstrate that it must be construed broadly to safeguard privacy in the face of evolving surveillance technologies. FAC

¶¶ 23-35.

***Finally,*** to the extent scienter is a requirement under CIPA § 638.51, it is not a question ripe for decision. In any case, section 638.51 makes it unlawful to use or install a pen register or trap-and-trace device without consent or court authorization, regardless of mental state. *Id*. ¶¶ 24-27. Courts interpreting CIPA have recognized that liability attaches to the act itself, and Defendant's attempt to read in a scienter requirement contradicts the statutory text.

Because Plaintiff's allegations are detailed and consistent with binding and persuasive authority, and because each of Defendant's asserted grounds for dismissal fail as a matter of law, Defendant's Motion should be denied.

## BACKGROUND

Plaintiff Murphy Martines is a California resident who visited www.simpletire.com (the "Website") on multiple occasions, including April 9, 2025, for personal purposes. *Id*.¶ 15. Unbeknownst to users, including Plaintiff, Defendant embedded and executed third-party trackers operated by Google LLC, Meta Platforms Inc., Microsoft Corporation, and FullStory Inc. (the "Third Parties") on the Website. *Id*.¶¶ 6-8.

In capturing Plaintiff and Class Members' routing and signaling information as well as their personal and private behavioral information, the Trackers functioned as pen registers and trap-and-trace devices under California Penal Code § 638.50. *Id*.¶ 10. Likewise, Google LLC, Meta Platforms Inc., Microsoft Corporation, and FullStory Inc. used the exfiltrated data to enrich persistent behavioral profiles and track users across the internet for targeted advertising. *Id*.¶ 9.

Plaintiff and Class Members did not consent to the installation or execution of the Trackers. *Id*.¶ 12. Defendant also did not obtain the judicial authorization required under CIPA. *Id*.¶ 13. Plaintiff reasonably expected his behavioral information, including his browsing and areas of interest, to remain private, not to be intercepted and monetized. By enabling the Trackers, Defendant deprived Plaintiff

of control over his information, caused its commercial exploitation, and violated state law.

## PROCEDURAL HISTORY

Plaintiff filed this putative class action on July 22, 2025 (Case No. 2:25-cv-06703-AB-JC). Defendant responded with a motion to dismiss under Rules 12(b)(1), 12(b)(2), and 12(b)(6) (EFC No. 15), arguing lack of standing, that the technologies at issue do not constitute pen registers or trap-and-trace devices under CIPA, that Plaintiffs failed to allege scienter, and that Plaintiff's UCL claim failed as a matter of law. On October 16, 2025, Plaintiff filed the operative FAC, which bolstered the allegations regarding the identity of the Trackers, their operators, the nature of the data exfiltrated, and why that data qualifies as routing, addressing, and signaling information under CIPA's pen register and trap-and-trace provisions. *See generally* FAC. The FAC provided detailed technical allegations showing how the Trackers automatically capture and transmit behavioral metadata and other routing information to third-party advertising and data broker servers without user awareness or consent. Defendant renewed its Motion to Dismiss on October 30, 2025, reasserting its arguments regarding standing, the definition of pen registers or trap-and-trace devices, and scienter.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." To test the sufficiency of a pleading, a defendant may move under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." A motion to dismiss is disfavored and appropriate only when the complaint lacks a cognizable legal theory or fails to allege sufficient facts under such a theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive dismissal, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In evaluating such a motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029-30 (9th Cir. 2009). While a complaint must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," Rule 8 does not demand detailed factual allegations. *Twombly*, 550 U.S. at 555. Legal conclusions may provide the framework of a complaint, but they must rest on factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## ARGUMENT

### I. DEFENDANT'S INSTALLATION AND USE OF TRACKERS INJURED PLAINTIFF WITHIN THE MEANING OF CIPA

#### A. Plaintiff Has An Interest In Preventing the Uncontrolled Dissemination of His Personal Information

Defendant argues that Plaintiff cannot allege any cognizable injury and thereby lacks statutory standing to assert a claim under CIPA § 638.51. MTD at 9. Defendant is wrong.

As an initial matter, the California Legislature has authority to grant standing to sue in California courts absent concrete harm, because there is no case and controversy requirement for California courts. Courts have found that when, as here, a law treats statutory damages as an independent category of damages, claimants need not prove actual damages to recover statutory damages. *Chai v. Velocity Invs., LLC*, 108 Cal. App. 5th 1030, 1037-41 (2025) ("In a class action under the Act, actual damages are similarly inessential[.]"); *Guracar v. Student Loan Sols., LLC*, 111 Cal. App. 5th 330, 342 (2025) ("The California Legislature is therefore free to grant standing to sue in California courts absent concrete harm."). Here, CIPA makes clear that statutory damages of $5,000 are available per violation or "three times the amount of actual damages, *if any*, sustained by the plaintiff." Cal. Pen.

Code § 637.2(a)(1)-(2) (emphasis added). Moreover, "[i]t is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages." Cal. Pen. Code § 637.2(c). The plain text of the statute speaks for itself.

Even if this were not the case, "[i]n determining statutory standing under CIPA, courts have held IP address collection for targeted advertisement creates a concrete injury-in-fact." *R.C. v. Sussex Publishers, LLC*, 2025 WL 948060 at *3 (N.D. Cal. Mar. 28, 2025); *see also Shah*, 754 F. Supp. 3d at 932 (finding statutory standing where plaintiffs plausibly alleged, *inter alia*, the collection of their IP addresses); *Mirmalek*, 2024 WL 5102709 at *4 (same). This is also true of device information and other user identifiers. *See, e.g.*, *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1077-1078 (C.D. Cal. 2024) (finding statutory standing based on the collection of "browser and device data" by third party tracker). "CIPA codifies 'a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing.' There is no requirement that there be additional injury beyond the violation of that right or that the information collected must necessarily be sensitive and misused." *Camplisson v. Adidas America, Inc.*, 2025 WL 3228949 (S.D. Cal. Nov. 18, 2025) (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020)).

Further, CIPA protects individuals against the loss of an "individual's control of information concerning his or her person." *In re Facebook*, 956 F.3d at 598 (cleaned up). And "[i]dentifiers such as a … unique personal identifier, online identifier, [and] Internet Protocol address" are "personal information" because they "identif[y] … or could reasonably be linked, directly or indirectly, with a particular consumer or household." Civ. Code § 1798.140, subd. (v)(1). The Central District of California followed this reasoning in *Mitchener v. Talkspace Network LLC*, 2025 WL 1822801 (C.D. Cal. June 27, 2025). The *Mitchener* court, quoting *In re Facebook*, held that allegations of tracking "browsing activities, including an

individual's likes, dislikes, interests, and habits over a significant amount of time" were sufficient to allege a privacy injury. *Id.* at *7. It contrasted this with cases where the information at issue was "other, less personalized information," which "does not implicate privacy concerns in the same way." *Id.* at *7 (citing *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049-50 (N.D. Cal. 2022)).

Here, the FAC alleges far more than storage of cookies or disclosure of contact information. It pleads that Defendant embedded its Website with executable trackers—trackers that run on users' devices, collect routing, addressing, and signaling information, and transmit behavioral data to third parties in real time. FAC ¶¶ 147, 161, 175, 188. The FAC explains that a public IP address not only reveals the approximate location of the user but is also the means through which the user's communications are sent to and from the Internet. *Id.* ¶¶ 41-63. The FAC further notes that device-level metadata can distinguish between multiple devices using the same IP address, much like differentiating a handset on a shared telephone line. It states explicitly: "A public IP address is therefore 'routing, addressing, or signaling information'" (*Id.*¶ 50), and emphasizes that IP addresses are indispensable for directing communications while also permitting geolocation down to city, ZIP code, or even service area levels, *Id.*¶ 54. These allegations confirm that the IP addresses and device metadata collected by the trackers are the functional equivalent of call-routing records—the precise type of signaling information that CIPA's trap-and-trace and pen-register provisions are intended to protect.

But the harm is not just that Simple Tire collected Plaintiff's personal information without consent. The harm is also that, through the information the Third Parties collect, Website users, such as Plaintiff, are de-anonymized and identified by being linked to comprehensive, non-anonymous profiles maintained by data brokers—profiles that are offered up for sale to a near endless supply of advertisers. *McClung v. AddShopper, Inc.*, 2024 WL 189006 at *2, fn.1 (N.D. Cal. Jan. 17, 2024) ("The whole idea of AddShopper's scheme is to tie browsing activity

on one site with personal information disclosed on another site."); *see also*, *e.g.*, FAC ¶¶ 110-122. Plaintiff is harmed by this unauthorized and uncontrolled dissemination of his personal information.

Courts have routinely found such allegations to suffice for Article III standing. *Riganian*, 791 F. Supp. 3d at 1087 ("[T]he tracking of individuals' activity across thousands of websites, combined with extensive offline records gathered over decades, to generate uniquely identifying profiles on those individuals is sufficient to allege intrusion into privacy."); *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *6 (N.D. Cal. July 14, 2025) ("Gabrielli's allegations that Motorola deprived him control of personal information regarding his digital activity and profile are sufficient to establish a concrete injury to his right to privacy and confer standing."); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 940 (N.D. Cal. 2023) (finding Article III standing based on "Oracle's ability to amass vast amounts of personal data for the purpose of identifying individuals and aggregating their many identifiers") (cleaned up). This is so because, through Defendant's installation and use of the Trackers, Plaintiff has "lost control over [plaintiff's] private information because of another's intentional actions." *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 580 (N.D. Cal. 2025). As the Supreme Court has recognized, "both the common law and literal understandings of privacy encompass the individual's control of information concerning his or her person." *Dept. of Justice v. Reporters Committee For Freedom of Press*, 489 U.S. 749, 763 (1989).

Defendant's reliance on *Popa* is misguided. The *Popa* court explicitly declined to "revisit *Eichenberger* and *In re Facebook* in reaching [its] decision," leaving them and their progeny good law because "those decisions still accounted for the individual circumstances giving rise to the plaintiffs' alleged injuries rather than simply greenlighting a per se rule for privacy statutes." *Popa v. Microsoft Corporation*, 153 F.4th 784, 794 (9th Cir. 2025).

The instant case is more analogous to *In re Facebook* than to *Popa*. Like the instant case, *In re Facebook* involved a tracker "that track[ed] users' browsing histories when they visit[ed] third-party websites, and then compile[d] these browsing histories into personal profiles which [were] sold to advertisers." *Id*. (internal quotation and citation omitted). Plaintiff alleges a modern digital analogue of intrusion upon seclusion, which satisfies *Popa's* requirement of identifying a close historical common-law analogue. The FAC states that Simple Tire causes hidden Trackers to install surveillance scripts on visitors' devices, which immediately begin extracting identifiers, cross-device data, behavioral information, and routing signals the moment a user loads any page of Simple Tire's Website. FAC ¶¶ 6-9, 135-137, 147, 161, 175. Plaintiff alleges Simple Tire covertly transmits his device's IP address, location-revealing information, detailed browser fingerprinting attributes, and cross-session identifiers to Google, Meta, Microsoft, and FullStory without consent and without disclosure. *Id*. ¶¶ 6-13, 147, 161, 175. Plaintiff further alleges that these transmissions enable the trackers to generate a persistent behavioral dossier on him, including location, device identity, and session-level activity. *See, e.g., Id*. ¶¶ 11, 62, 88. This is the functional equivalent of secretly monitoring a person's activities within a private digital space—conduct the Restatement and California courts have long recognized as a highly offensive intrusion.

Moreover, *Popa* involved tracking via "session-replay technology." This technology "allows a business to capture and reproduce customers' interactions with its website," and "[t]he session-replay provider then uses those website communications to recreate website visitors' entire visit to the website." *Popa*, 153 F.4th 784, 786 (cleaned up). "A business utilizing this technology can then access useful consumer data, including detailed heat maps of a website that provide information about which elements of a website have high user engagement how far website users scrolled on the website, and the total clicks within a given area of the website." *Id.* As the Ninth Circuit explained, this technology "seem[ed] most

similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales." *Id.*, at 791.

To be sure, the plaintiff in *Popa* alleged this technology "captured" the specific "product" the user viewed on the website—*i.e.*, the user's browsing information. *Id.*, at 786–87. But crucially, the plaintiff also alleged this information was *anonymous*. *Id.* ("While Popa also alleges that a user's mailing address is captured when entered for delivery information, the screenshot produced in the complaint indicates that masking software … omitted the street number and zip code."). So, *Popa* boiled down to a third party collecting anonymous browsing information that was used by the website to troubleshoot technical issues.

As the Popa court explained, "the kind of analysis contemplated by *TransUnion* ... requires a plaintiff to demonstrate more than just a statutory violation when evaluating whether a plaintiff has alleged a concrete injury." *Popa*, 153 F.4th at 793. Significantly, unlike the instant case, the plaintiff in *Popa* did not allege that their information was de-anonymized, linked to comprehensive, individualized profiles maintained by data brokers, and sold to third-party advertisers. *See* FAC ¶¶ 96-109, 110-122. Plaintiff alleges Simple Tire's trackers collect location-revealing public IP addresses, which permit household-level geolocation and user identification with over 95% accuracy. *Id.* ¶ 58. Plaintiff also pleads that the trackers obtain device fingerprinting details—including screen dimensions, system fonts, time zone, language, installed technologies, compression capabilities, and other unique attributes—making reidentification highly accurate. *Id.* ¶¶ 75-77. He alleges the trackers extract and transmit behavioral signals, such as URLs visited, page categories, clickstream patterns, and session behavior. *Id.* ¶¶ 3, 137, 140.

The FAC also pleads that Simple Tire's chosen partners Google, Meta, Microsoft, and FullStory use this combination of identifiers and behaviors to conduct identity resolution, cross-site matching, and behavioral profiling. *See, e.g., Id.* ¶¶ 147, 161, 175. Plaintiff alleges the data is sensitive, specific, personally-identifiable,

and commercially exploited—precisely the type of information *Popa* emphasized may qualify as a concrete injury. Courts have found that such loss of control over one's information is a privacy harm. *See. e.g., Frasco v. Flo Health*, Inc., 349 F.R.D. 557, 580 (N.D. Cal. May 19, 2025); *Katz-Lacabe v. Oracle Am., Inc*., 668 F. Supp. 3d 928, 940 (N.D. Cal. 2023); *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *6 (N.D. Cal. July 14, 2025). Contrary to Defendant's assertions, this has remained true even after the *Popa* decision. *Deivaprakash v. Conde Nast Digital*, 2025 WL 2779193, at *1–2 (N.D. Cal. Sept. 30, 2025) (finding that plaintiff's alleged injuries of "how the trackers allow the third parties to generate profiles that reflect users' geographic locations, incomes, and preferences, among other characteristics, and hinder users' ability to remain anonymous as they browse the Internet … satisfie[d] the requirements of *Popa*.").

Plaintiff pleads he lost the ability to restrict, manage, or prevent Simple Tire's disclosure of his identity, location, and behavioral information to third parties. FAC ¶¶ 12, 133-135, 151. These allegations represent a loss-of-control injury that the Ninth Circuit recognizes as inherently concrete under privacy-invasion jurisprudence. *See Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017); *In re Facebook Tracking*, 956 F.3d 589 (9th Cir. 2020); *Camplisson v. Adidas Am., Inc.*, 2025 WL 3228949, at *6 (S.D. Cal. Nov. 18, 2025) ("Plaintiffs have alleged that the Trackers on Defendant's Website have collected a broad set of their personal identifying and addressing information without their consent and in violation of CIPA. This claim maintains a violation of privacy, particularly in the control of their own information. Thus, the injury-in-fact is in accordance with traditional privacy harms and is concrete. Plaintiffs do not lack Article III standing."); *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *8 (N.D. Cal. Aug. 29, 2025) (same). Thus, unlike the minimal, anonymized collection *Popa* cautioned against, Plaintiff alleges Simple Tire's conduct reflects the same kind of intentional, covert, and identity-linked surveillance that historically supported intrusion-upon-seclusion claims. Like

the allegations in these post-*Popa* cases, Plaintiff's FAC sufficiently alleges concrete injury to establish Article IIII standing.

To the extent that Defendant's authorities say otherwise, they are distinguishable because, unlike in the instant case, none of those cases involved allegations that the information collected by the third-party trackers on the websites was linked to de-anonymized, comprehensive consumer profiles that were then sold for advertising purposes. *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174 (N.D. Cal. 2025) ("Khamooshi") (finding no "unjust" disclosure of IP address, but failing to consider the disclosure of other information and its linkage to a profile of more comprehensive information); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182 (N.D. Cal. 2020) ("Heeger") (alleging a situation where disclosures were made by one party to the communication to the other, not to third parties); *Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940 (S.D. Cal. 2024) ("Peloton") (finding that no third party intercepted Plaintiff's communications with Defendant); *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185 (N.D. Cal. 2019) (finding that CIPA "applies to unconsented geolocation tracking" but plaintiffs had alleged only the "storage of that data"). The plaintiffs in *Hubbard v. Google LLC*, 2024 WL 3302066 (N.D. Cal. July 1, 2024) ("Hubbard"), as in *Khamooshi* and *Heeger,* did not bring claims under CIPA at all. Regardless, the harm can be based on either the disclosure of "specific, sensitive information" or that the third party "acquired an enormous amount of individualized data" as a result of Defendant's conduct. *Riganian*, 791 F. Supp. 3d at 1087. Plaintiff's allegations fall into the latter category, *see* FAC ¶¶ 96-109, as Defendant's installation of the Trackers caused "comprehensive aggregation of data that reveals a person's internet activity with specificity." *Riganian*, 791 F. Supp. 3d at 1087.

The remainder of Defendant's cases do not involve § 638.50 and are thus unavailing.[1]

## II. PLAINTIFF CAN MAKE A CLAIM COMPARABLE TO MISAPPROPRIATION

Defendant argues that the FAC fails to allege any facts showing that Plaintiff's data has independent economic value or that any purported loss of value of such data caused him personal economic harm. MTD at 14. Again, Defendant is wrong.

The FAC alleges economic injury analogous to misappropriation or conversion. Plaintiff alleges that Defendant derived an unlawful economic benefit through its installation and use of the Trackers. Plaintiff pleads that Simple Tire and its tracking partners treat his personal data as a monetizable commodity and profit from its use in targeted advertising, real-time bidding, retargeting, and audience segmentation. FAC ¶¶ 9, 88-91, 110-122. He alleges that his browsing behavior, identifiers, and cross-session patterns have monetary value, and Simple Tire wrongfully appropriated that value without consent. *Id.* ¶¶ 80-87, 88-91, 95. For example, Plaintiff alleges that Plaintiff's data is worth \$52 per year, that Plaintiff's contact information is worth \$4.20 per year, and Plaintiff's demographic information is worth \$3.00 per year. FAC ¶¶ 81-82. This fits squarely within the type of misappropriation-of-value injury recognized as concrete by *In re Facebook* and

[1] *Morilha v. Alphabet Inc.*, 2024 WL 5205542 (N.D. Cal. Dec. 23, 2024) (involving a Stored Communications Act claim, breach of contract, invasion of privacy under the California constitution, *not* CIPA); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069 (N.D. Cal. 2022) (analyzing CIPA under § 631(a), *not* § 638.50); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012) (involving claims under the Stored Communication Act and False Advertising Law, and claims for breach of contract, conversion, unjust enrichment, negligence, and invasion of privacy under the California constitution, *not* CIPA); *In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 968 (N.D. Cal. 2014) (involving claims under the CLRA, breach of contract, intrusion upon seclusion, and fraudulent business practices under UCL, *not* CIPA); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012) (involving claims under the Stored Communications Act, federal Wiretap Act, invasion of privacy under the California Constitution, negligence, Computer Fraud and Abuse Act, Trespass, CLRA, UCL, conversion, and unjust enrichment, *not* CIPA).

consistently upheld post-*TransUnion*. Specifically, Plaintiff alleges that by installing and using the Trackers, Defendant caused Plaintiff's information to be collected by the Third Parties without Plaintiff's consent. Defendant benefitted from this because the Trackers de-anonymized Plaintiff, enabling the collected information to be sold to advertisers for a higher value. *See, e.g.*, *Id.* ¶ 89 ("Defendant has a strong financial incentive … Defendant and its partners [ ] participate in data-driven ad targeting, increase the value of its advertising inventory, and track users across sessions and websites, all of which provide economic benefit[.]"). This allegation alone suffices to support a finding that Plaintiff adequately pleaded standing. *See, e.g.*, *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1038 (Article III standing alleged where "Plaintiff ... conferred a benefit on Defendant through the use and dissemination of Plaintiff's ... personal information ... which Defendant used and disseminated for its own monetary benefit.") (cleaned up). These allegations are like *Greenley*, where the defendant collected the data, "packaged" it, "and sold it to clients for advertising purposes." *Id.*, at 1035; see also, e.g., FAC ¶¶ 110-122. And Plaintiff alleges "the tracking software captured more than just [Plaintiff's] IP address … and that this information was sent to third parties, not just Defendant." *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 930 (C.D. Cal. 2025). "Courts in this District have regularly held that even if plaintiffs have suffered no economic loss from the disclosure of their plausibly private information, they are allowed to proceed through the pleadings stage with a claim for unjust enrichment to recover the gains that a defendant realized from its allegedly improper conduct." *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *15. Thus, even under *Popa's* more stringent analysis, Plaintiff pleads multiple independent bases for concrete injury.

## III. THE TRACKERS ARE "PEN REGISTERS" BASED ON THE PLAIN TEXT OF CIPA, WHICH CONTROLS

### A. Federal Courts Have Consistently Held That Comparable Software Is Covered by CIPA §§ 638.50-638.51

Defendant argues that the "third-party 'tracking' software on the Website in the FAC does not constitute a 'pen register' and/or 'trap and trace device' as a matter of law." MTD at 15. Federal courts adjudicating these claims beg to differ.

CIPA has been interpreted to apply to new technologies where such application does not conflict with the statutory scheme. CIPA prohibits installing or using "pen registers" without prior court approval. *See* Cal. Penal Code § 638.51(a). "Nothing in the statutory definition limits pen registers to those that operate the same way as a traditional phone pen register." *Shah*, 754 F. Supp. 3d at 929.

CIPA defines a "pen register" as a "device or process that records or decodes … information transmitted by an instrument or facility from which a wire *or* electronic communication is transmitted." Cal Pen. Code, § 638.50, subd. (b) (emphasis added). Thus: "[b]y the plain meaning of § 638.50(b), collection of the recipient phone number or IP address is not a required element. All that is required is that the Trackers record addressing information transmitted by the user's computer or smartphone in connection with the outgoing HTTP request to [Defendant's] website, regardless of whether that addressing information pertains to the sender or the recipient of the communication at issue." *Shah*, 754 F. Supp. 3d at 929; *see also Garon v. Keleops USA, Inc.*, 2025 WL 2522374, at *3-4 (N.D. Cal. Sept. 2, 2025) (rejecting argument that trackers were not "pen registers" because they did not "make any record of other outgoing routing, dialing, or signaling information"). The Trackers here are "pen registers" because they are "processes." Courts have held that processes – like the Trackers at issue in the instant case – encompass "software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting.'" *Greenley*, 684 F. Supp. 3d at 1050. These activities are precisely

what Plaintiff alleges in the complaint. The Trackers that Defendant embeds in its Website are operated and used by the Third Parties to collect consumer data, de-anonymize and identify consumers by combining the collected information into comprehensive profiles, and ultimately sell those profiles to numerous advertisers through the real-time bidding process. FAC ¶¶ 2-7, 62; *see also Mirmalek*, 2024 WL 5102709 at *4 ("Plaintiff alleges that the instruments or facilities are users' computers or smartphones … [and] that users' devices transmit electronic communications in the form of Hypertext Transfer Protocol … or GET requests to load Defendant's website.") (cleaned up).

Plaintiff alleges that the Trackers Defendant embedded on its Website are pen registers as defined under Cal. Penal Code § 638.50. Specifically, Defendant installs the Trackers on Plaintiff's internet browser. FAC ¶¶ 2, 6. The Trackers are pen registers under CIPA because they collect and store users' information, including routing information such as IP addresses and cookies which uniquely identify each user. *Id.* ¶¶ 3-5. The Trackers collect consumer's IP addresses and other routing, signaling, or addressing information along with cookies, unique user ID, and/or Device Metadata which allow for the de-anonymization and identification of users. *Id.* ¶¶ 2-7, 11-12. Of note, the definition of pen register found in Cal. Penal Code § 638.50 does not limit "pen registers to those that operate the same way as a traditional phone pen register." *Shah*, 754 F. Supp. 3d at 929. On the contrary, the California Legislature chose "expansive language" for the definition of a "pen register" that "the Court cannot ignore," language that is "specific as to the type of data [collected]," but "vague and inclusive as to the form of the collection tool" (*i.e.* "device or process"). *Greenley*, 684 F. Supp. 3d at 1050.

Thus, federal courts have consistently held that online trackers or tracking software such as the Trackers at issue here are "pen registers." *See, e.g.*, *Shah*, 754 F. Supp. 3d at 929 (agreeing with "[p]laintiffs' theory [] that the third-party Trackers operate as pen registers under the meaning of the statute because they are processes

that record users' IP addressing information"); *Mirmalek*, 2024 WL 5102709, at *3 ("[U]nder the inclusive language of CIPA's definition of a pen register, Plaintiff sufficiently alleges that the Trackers are a 'device or process…'"); *Moody*, 742 F. Supp. 3d at 1076 ("Plaintiff's allegations that the TikTok Software is embedded in the Website and collects information from visitors plausibly fall within the scope of §§ 638.50 and 638.51."); *Greenley*, 684 F. Supp. 3d at 1050 (finding software constituted a "pen register"); *Zarif v. Hwareh.com, Inc.*, 2025 WL 486317, at *12 (S.D. Cal. Feb. 13, 2025) (same); *Rodriguez*, 762 F. Supp. 3d at 929 (same); *Lesh v. Cable News Network, Inc.*, 767 F. Supp. 3d 33, 40 (S.D.N.Y. 2025) (same). Defendant's citation to a footnote in a concurrence in *Gutierrez v. Converse Inc.*, 2025 WL 1895315 (9th Cir. July 9, 2025), involving § 631(a) claims at the summary judgement stage, does not move the needle.

Defendant cites several cases that are unpersuasive and distinguishable.[2] In *Aviles v. Liveramp, Inc.*, 2025 WL 487196, at *3 (Cal. Super. Ct. Jan. 28, 2025), the defendant did "not argue that software cannot be a pen register or trap and trace device." Instead, the *Aviles* court focused on whether IP addresses are "routing, addressing, or signaling information." *Aviles*, 2025 WL 487196, at *2. IP addresses

[2] Moreover, not only are state trial court decisions just predicting how the California Supreme Court will rule, such decisions are not even citable in California state courts and have no precedential value. *See* Cal. R. Ct. 8.1115(a) ("[A]n opinion of a California Court of Appeal or superior court appellate division that is not certified for publication or ordered published must not be cited or relied on by a court or a party in any other action."). In fact, citing an unpublished case in California state courts, unless the opinion meets a narrow set of criteria not applicable here, can be sanctionable. *See, e.g., Alicia T. v. Cnty. of Los Angeles*, 222 Cal. App. 3d 869, 885 (1990), modified (Aug. 16, 1990) (sanctions imposed where, among other misconduct, "the T. family's counsel cited the unpublished case eight times in the reply brief and discussed it for four pages"). Thus, there is no reason to give the state court decisions Defendant cites any more persuasive value solely because they were issued by state courts. *Rodriguez*, 762 F. Supp. 3d at 929 ("The fact that a California Superior Court concluded differently, while persuasive, is not binding and does not foreclose the possibility that software may qualify as a pen register or trap and trace device under California law, at least at the pleading stage."). Instead, each of the state court decisions Defendant cites should be accorded value based on their actual analysis (or lack thereof).

are "routing, addressing, or signaling information" for the reasons explained below. But the *Aviles* court still agreed with Plaintiff that "the statutory definition of a pen register now includes electronic communications in mediums *other than simply telephone communications*." *Aviles*, 2025 WL 487196, at *2 (emphasis added). And in *Licea v. Hickory Farms LLC*, 2024 WL 1698147, at *4 (L.A. Super. Ct. Mar. 13, 2024), the court ruled that plaintiff's claim was "lacking factual support [] under the [demurrer] standard." Thus, the deficiency of the claim did not hinge on whether the alleged pen register device was a telephonic device. Rather, the deficiency of the claim was the result of a "conclusively pled complaint." *Id.*

### B. Nothing In The Statutory Text Limits the Definition Of A "Pen Register" to Telephonic Equipment

Defendant is likewise mistaken in insisting that a "pen register" must be capable of attachment to a telephone line. The word "telephone line" appears nowhere in the definition of a "pen register." Cal. Pen. Code § 638.50; *see also Lesh*, 767 F. Supp. 3d at 41 ("The statutory text includes no limitation to information transmitted by telephone or over a phone line."). On the contrary, the text of the statute is not only broad (*Greenley*, 684 F. Supp. 3d at 1050); it expressly contemplates technology beyond telephones, vis-à-vis defining "pen registers" as including devices or processes that capture "wire *or* electronic communications[s]." Cal. Pen. Code § 638.50(b) (emphasis added); *see also Lesh*, 767 F. Supp. 3d at 41 ("[T]he definition of pen register in CIPA encompasses a variety of 'electronic communications.'").

## IV. TO THE EXTENT SCIENTER IS A REQUIREMENT UNDER CIPA § 638.51 IT IS A QUESTION OF FACT NOT RIPE FOR DECISION

At best, *Heiting v. Taro Pharms USA, Inc.*, 709 F. Supp. 3d 1007, 1019 (C.D. Cal 2023), stands for the proposition that there is a scienter requirement under CIPA § 631. Defendant's attempt to extend it to claims under CIPA § 638.51 is misguided and unpersuasive. Unlike CIPA § 631, which explicitly penalizes "intentionally" wiretapping communications, § 638.51 does not expressly impose a scienter

requirement. *Compare* Cal. Penal Code § 631 ("Any person who … *intentionally* taps, or makes any unauthorized connection…") (emphasis added) *with* Cal. Penal Code § 638.51 ("[A] person may not install or use a pen register or a trap and trace device without first obtaining a court order…"). The text of § 638.51 criminalizes the act itself, not the mental state of the person performing it. Plaintiffs in civil cases argue that the use of a tracking device without a court order is a violation, regardless of the defendant's knowledge. *See, e.g.*, *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064,1079 (N.D. Cal. 2023).

Regardless, Plaintiff alleges that Defendant acted with the intent to intercept Plaintiff's communications by intentionally embedding the Trackers on its Website. *See, e.g.*, FAC ¶¶ 6-8. Plaintiff alleges that by installing the Trackers on its Website, Defendant intentionally invaded Plaintiff's privacy in a way prohibited by Cal. Penal Code § 638.51(a). *Id.* ¶¶ 11-12, 45, 65-72, 78, 91, 101. Allegations that a defendant implemented a system to record conversations are sufficient to demonstrate intent. *Doe*, 690 F. Supp. 3d at 1079 (finding that allegations that the platform supplied certain code for the collection of user's data to intercept electronic communications were sufficient at the motion-to-dismiss stage to allege the intent element of users' claim against platform); *James v. Walt Disney Co.*, 2023 WL 7392285 (N.D. Cal. Nov. 8, 2023) (finding that it could be "reasonably inferred" that the defendant intended to intercept information because it contracted with a third-party software provider to collect that information).

In any event, questions of scienter are questions of fact and, as such, are not ripe for adjudication at the motion to dismiss stage. "Whether a person possesses the requisite intent under CIPA is generally a question of fact." *Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 859 (W.D. Wash. 2024) (citation omitted). Whether Defendant truly possessed the requisite intent will be "tested on an evidentiary record." *Id.* at 860 (citing *Doe*, 690 F. Supp. 3d at 1080).

## V. CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion. If the Court grants the MTD in any respect, Plaintiff respectfully requests leave to amend. *See Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017).

Dated: December 19, 2025

**BURSOR & FISHER, P.A.**

By: /s/ *L. Timothy Fisher*
L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Daniel S. Guerra (State Bar No. 267559)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
dguerra@bursor.com

Reuben D. Nathan, Esq. (State Bar No. 208436)
**NATHAN & ASSOCIATES, APC**
2901 W. Coast Hwy., Suite 200
Newport Beach, CA 92663
Telephone: (949) 270-2798
Email: rnathan@nathanlawpractice.com

Ross Cornell, Esq. (State Bar No. 210413)
**LAW OFFICES OF ROSS CORNELL, APC**
40729 Village Dr., Suite 8 - 1989
Big Bear Lake, CA 92315
Telephone: (562) 612-1708
Email: rc@rosscornelllaw.com

*Attorneys for Plaintiff and the Putative Class*

**LOCAL RULE 11-6.2 CERTIFICATION OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff Murphy Martines, certifies that this brief contains 6,044 words, which complies with the word limit of L.R. 11-6.1.

Dated: December 19, 2025

/s/ *L. Timothy Fisher*
L. Timothy Fisher